# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**JAMES (BARRY) SANDEFUR; CHRISTY
SIDENER; HAYDEE ACEVEDO; and
MELANIE WATSON,**

      **Plaintiffs,**

**v.**

                             **CASE NO.: 3:13-cv-00475
CLASS ACTION**

**PUBLISHERS CIRCULATION
FULFILLMENT, INC.,**

      **Defendant.**

_____/

## SECOND AMENDED COMPLAINT

### A. PRELIMINARY STATEMENT

1.    This is an action brought by former employees of Defendant, Publishers Circulation Fulfillment, Inc. (hereinafter "PCF") who were employed in various capacities by PCF in the past 4 years. Plaintiffs seek redress on behalf of themselves and all others similarly situated for Defendant's failure to pay earned overtime wages and earned commissions.

2.    This is an action on behalf of a class of over 500 employees who worked at the PCF call center located in Pensacola, Florida, during the relevant time period. The Plaintiffs and other class members were responsible for an in-bound and out-bound call center where they handled customer service phone calls and emails for customers wishing to buy newspaper subscriptions, maintain old subscriptions, cancel subscriptions, and make complaints and inquiries regarding subscriptions for *The New York Times*.

1

## B. JURISDICTION AND PARTIES

3.     This is an action to recover unpaid overtime wages, liquidated damages, interest, attorney's fees and costs under the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. §§201 et. seq.  This Court has jurisdiction pursuant to 29 U.S.C. §216(b).  Further, this is an action to recover unpaid earned commissions, attorney's fees and costs.  This Court also has supplemental jurisdiction to hear these related state law claims pursuant to 28 U.S.C. §1367.

4.     Plaintiffs, James (Barry) Sandefur, Christy Sidener, Haydee Acevedo, and Melanie Watson are citizens of Santa Rosa and Escambia Counties, Florida.  At all relevant times to this action, the Plaintiffs and other class members were employees of PCF and serving in various positions at the call center in Pensacola, Florida.

5.     Defendant, PCF, is a Maryland corporation authorized to do business under the laws of the State of Florida.  PCF operates a call center in Escambia County, Florida, which fields calls and emails worldwide for customer service for *The New York Times*.

6.     As employees of PCF, Plaintiffs and other class members were engaged in commerce.  The work of Plaintiffs, and other class members, for PCF affected interstate commerce for the relevant time period.

7.     Upon information and belief, PCF grossed over $500,000.00 annually for the relevant time period.

8.     PCF is an employer under the FLSA.

## C. CLASS ACTION ALLEGATIONS

9.     Plaintiffs bring Count I as a collective opt-in action pursuant to 29 U.S.C. §216(b) (hereinafter referred to as "Opt-In Class").  Count one is brought by Plaintiffs, and on behalf of others similarly situated, as they are described in paragraph 2, who were paid hourly during the

2

relevant time period. Plaintiffs and others similarly situated regularly worked overtime hours but were not properly paid for the overtime hours worked during the relevant time period. Plaintiffs do not have the employment records to allege the exact over time hours worked, but Plaintiffs worked over-time hours each pay period during the relevant time period. Upon information and belief, Defendant maintains the employment records that will show the exact over time hours worked.

10.     Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3) with respect to the claims set forth in Counts II through IX (hereinafter referred to as "Opt-Out Class"). Counts II through IX are brought by Plaintiffs and other class members who were not properly paid earned commission compensation for the relevant time period.

11.     All claims set forth in Counts II through IX are brought by Plaintiffs on behalf of themselves and other similarly situated, as they are described in paragraph 2, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The named Plaintiffs seek to represent a class consisting of all of those individuals who were employed by the Defendant at the call center located in Pensacola, Florida, during the relevant time period who earned commission compensation, but were not properly paid earned commission compensation.

12.     The precise number of individuals in each class is known only to Defendant. The classes together are believed to include over 500 individuals. The Pensacola Call Center was shut down permanently in October 2013. As a result, the class is comprised of individuals who are no longer employed at the Pensacola call center. Joinder of all class members is impractical.

13.     There are questions of fact and law common to the class with respect to the claims set forth in Counts II through IX (Opt-Out Class). These common questions include whether the

3

Defendant properly calculated and paid earned commission compensation per the various incentive program agreements Defendant maintained with its employees.

14.    The claims of the named Plaintiffs are typical of those of the class. These typical, common claims predominate over any questions affecting only individual class members. The named Plaintiffs have the same interests as the other members of the class and will vigorously prosecute those interests on behalf of the class.

15.    Counsel for the Plaintiffs has handled numerous class action lawsuits in both Federal and State Courts. The Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action.

16.    A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy for the following reasons:

        (a)    the common issues of law and fact as well as the relatively small size of the individual class member's claims substantially diminish the interest of members of the claim in individually controlling the prosecution of separate actions; (b) many members of the class are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance; (c) there has been no litigation already commenced against the Defendant by the members of this class to determine the questions presented; (d) it is desirable that the claims be heard here in this forum since most, if not all, Plaintiffs live here and Defendant has significant contacts with this district; and (e) a class action can be managed without undue difficulty because the Defendant has regularly committed the violations complained of herein and is required to maintain detailed records concerning each member of the class.

4

## D. **HISTORY OF COMMISSIONS AND OVERTIME**

17.     PCF promised each Plaintiff and class member that he or she would be receiving commissions pursuant to the company's applicable program for commissions.  There are four different programs for commissions which are relevant to this lawsuit and described below.

18.     In exchange for receipt of these commissions, each Plaintiff and class member agreed to become employed by PCF, and/or continue employment for PCF.

19.     PCF offered the following commission programs to Plaintiffs and class members:

(a)     Credit Card Incentive Program which establishes levels of commission based on the number of payments converted to credit card from some other form of method of payment [See Exhibit "1"];

(b)     Up Sell/Cross Sell Operational Strategy for Customer Care which establishes incentives and initiatives for driving agency performance [See Exhibit "2"];

(c)     Save the Stop Program which establishes incentives for preventing a customer from terminating his or her service [See Exhibit "3"]; and

(d)     Credit Card Acquisition Program which establishes incentives for credit card numbers obtained on new accounts [See Exhibit "4"].

20.     When serving as call center agents, all Plaintiffs and class members were paid on an hourly basis and achieved commissions based upon the commission programs described above.  Plaintiffs and class members regularly worked over-time hours.  Plaintiffs do not have the employment records to determine accurately the number of over-time hours worked. Plaintiffs worked over-time hours every pay period during the relevant time period.  Upon information and belief, Defendant maintains the employment records necessary to determine accurately the number of over-time hours worked.

5

21.     As Plaintiffs and class members were promoted into a managerial and/or supervisory position, he or she became a salaried employee who was awarded commissions based on the dollar amounts of commissions earned by subordinates.

22.     PCF has been using incorrect data and/or improperly calculating data when determining the amount of commissions earned by Plaintiffs and class members and therefore has not been properly paying Plaintiffs and class members all earned commissions. PCF used the "Siebel" program for calculating hours worked, commissions earned and overtime pay. There is a systematic processing error in how earned commissions were calculated which affected all commission earning employees in the same manner such that none were properly paid earned commissions. Upon information and belief, PCF has not properly paid earned commissions since January 2008.

23.     PCF has been using incorrect data and/or improperly calculating data when determining the "regular hourly rate" of pay for overtime hours worked by Plaintiffs and class members and therefore has not been properly paying for all earned overtime hours. The "Siebel" system improperly calculated the "regular hourly rate" for purposes of determining overtime pay. The systematic processing error caused hourly employees to be underpaid in the same manner across the board. Upon information and belief, PCF has not properly paid earned overtime hours for more than 10 years.

24.     PCF willfully and intentionally failed to pay Plaintiffs overtime wages in violation of the FLSA. Further, PCF willfully and intentionally failed to pay Plaintiffs earned commissions.

6

### E. **PLAINTIFFS REPORT PCF'S FAILURE TO ACCURATELY COMPENSATE COMMISSIONS**

25.     In May, 2011, Plaintiff Sandefur discovered PCF's failure to correctly determine and pay the commission earned by Plaintiffs and reported the failure to his manager, Michael Heyert.  In response, Mr. Heyert assured Sandefur that PCF was going to pay the Plaintiffs the correct amount of commission as soon as the calculation problem was resolved.

26.     In January, 2012, Sandefur, along with the Human Resources Manager, Pat Schmidt, made a formal presentation to the Vice President and Executive Directors of PCF to eliminate the existing commission structure and replace it with higher hourly wages based on the employee proven skills without any additional cost to the company.  This proposal was initiated due to the lack of correct payment of commissions between March 2011 and January 2012 and the pay inequity it created among employees.  PCF acknowledged that commissions had been improperly calculated, but offered no other solution.  PCF executives denied the implementation of the new wage proposal.

27.     In April, 2012, Plaintiff Sandefur and Melissa Arroyo had a meeting with an Executive Director from the New York Times customer care department and reported the deteriorated morale among employees due to the lower commissions being paid.

28.     On January 1, 2013, Sandefur filed a formal ethics complaint with PCF reporting that PCF has knowingly and willingly submitted incorrect commission payment amounts.  PCF once again acknowledged that commissions were calculated incorrectly and that accurate commissions had not been paid.

29.     In February, 2013, Sandefur held a conference call with Vice-Presidents and Executives from PCF and again informed all parties that PCF's commission calculation and payment process was broken and required the company to immediately implement a new process

to insure that Plaintiffs were properly paid their earned commissions. Again, PCF acknowledged that there was an error in calculating commissions, but offered no solutions.

      30.    On March 18, 2013, PCF announced to all employees that PCF was closing the call center located in Escambia County, Florida, effective October, 2013, and began the process of terminating the employees of that call center.

      31.    On March 21, 2013, PCF ordered employees to cease and desist all historical research regarding PCF's inaccurate commission payments.

      32.    As of this date, PCF has failed to correct the improper calculation of commissions, and has failed to pay the correct commission due and owed to Plaintiffs and class members.

**COUNT I – FLSA CLAIMS FOR OVERTIME**
**(OPT-IN PURSUANT TO 29 U.S.C. §216(b)**

      33.    Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

      34.    This action arises under the laws of the United States. It is believed that there are many other similarly situated employees to Plaintiffs in regard to PCF's failure to properly calculate and pay overtime hours and earned commissions. The similarly situated employees have not received proper commission and overtime hours for work performed which occurred during the three year period prior to filing this Complaint. This Count is brought as a collective action under 29 U.S.C. §216(b).

      35.    Pursuant to 29 U.S.C. §216(b), twenty-seven (27) claimants have consented in writing to be a party Plaintiff in this FLSA action (as of the date of this pleading).

      36.    The Defendant violated the overtime provisions of the FLSA, 29 U.S.C. §207(a) by failing to pay the Plaintiffs and others similarly situated at an hourly rate equal to one and

8

one-half times the regular hourly rate at which they were employed for all compensable time they were employed in excess of 40 hours in each work week.

37.     Plaintiffs and others similarly situated are entitled to receive overtime pay for hours worked in excess of 40 hours in a work week at a rate not less than time and one-half of their regular rate of pay.

38.     The Defendant's failure to pay the Plaintiffs and others similarly situated the Federally mandated overtime wage rate for all time they were employed in excess of 40 hours in each work week was a willful violation of the FLSA.

39.     As a consequence of Defendant's violation of the FLSA, the Plaintiffs and others similarly situated are entitled to recover their unpaid overtime wages plus an additional equal amount of liquidated damages pursuant 29 U.S.C. §216(b).

40.     Plaintiffs and others similarly situated are entitled to pre-judgment interest if liquidated damages are not awarded.

41.     Plaintiffs and others similarly situated are entitled to a reasonable attorney's fee and costs to be paid by PCF.

### COUNT II–BREACH OF CONTRACT-CREDIT CARD INCENTIVE PROGRAM
### (CLASS ACTION)

42.     Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

43.     PCF breached its contract with Plaintiffs by failing to properly calculate and pay earned commission compensation per the Credit Card Incentive Program [See Exhibit "1"].

44.     As a result of PCF's breach, Plaintiffs have suffered damages.

### COUNT III – UNJUST ENRICHMENT-CREDIT CARD INCENTIVE PROGRAM
### (CLASS ACTION)

45.     Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

9

46.    Plaintiffs have demanded payment from Defendant for earned commission compensation pursuant to the Credit Card Incentive Program and Defendant has refused to pay.

47.    Plaintiffs are unable to determine the reasonable value of the earned compensation as Defendant has access to the documents and programs containing the calculations and has refused to produce said documents and programs.

48.    Under such circumstances, a reasonable person would expect to be charged for the labor provided by Plaintiffs to Defendant.

49.    Defendant has benefited from the labor of Plaintiffs.  As a result of Plaintiffs' labor, Defendant has become unjustly enriched at Plaintiffs' expense.

50.    Defendant will be unjustly enriched if it is not required to pay the fair market value of the labor provided to Defendant by Plaintiffs.

51.    Absent a finding in favor of Plaintiffs on Count II, the Plaintiffs will not have an adequate remedy at law.

### COUNT IV – BREACH OF CONTRACT-UP SELL/ CROSS SELL INCENTIVE PROGRAM (CLASS ACTION)

52.    Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

53.    PCF breached its contract with Plaintiffs by failing to properly calculate and pay earned commission compensation per the Up Sell/Cross Sell Incentive Program [See Exhibit "2"].

54.    As a result of PCF's breach, Plaintiffs have suffered damages.

### COUNT V – UNJUST ENRICHMENT-UP SELL/ CROSS SELL INCENTIVE PROGRAM (CLASS ACTION)

55.    Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

56.     Plaintiffs have demanded payment from Defendant for earned commission compensation pursuant to the Up Sell/Cross Sell Incentive Program and Defendant has refused to pay.

57.     Plaintiffs are unable to determine the reasonable value of the earned compensation as Defendant has access to the documents and programs containing the calculations and has refused to produce said documents and programs.

58.     Under such circumstances, a reasonable person would expect to be charged for the labor provided by Plaintiffs to Defendant.

59.     Defendant has benefited from the labor of Plaintiffs.  As a result of Plaintiffs' labor, Defendant has become unjustly enriched at Plaintiffs' expense.

60.     Defendant will be unjustly enriched if it is not required to pay the fair market value of the labor provided to Defendant by Plaintiffs.

61.     Absent a finding in favor of Plaintiffs on Count IV, the Plaintiffs will not have an adequate remedy at law.

<u>**COUNT VI – BREACH OF CONTRACT-SAVE THE STOP PROGRAM**</u>
**(CLASS ACTION)**

62.     Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

63.     PCF breached its contract with Plaintiffs by failing to properly calculate and pay earned commission compensation per the Save the Stop Program [See Exhibit "3"].

64.     As a result of PCF's breach, Plaintiffs have suffered damages.

<u>**COUNT VII – UNJUST ENRICHMENT-SAVE THE STOP PROGRAM**</u>
**(CLASS ACTION)**

65.     Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

66.     Plaintiffs have demanded payment from Defendant for earned commission compensation pursuant to the Save the Stop Program and Defendant has refused to pay.

67.     Plaintiffs are unable to determine the reasonable value of the earned compensation as Defendant has access to the documents and programs containing the calculations and has refused to produce said documents and programs.

68.     Under such circumstances, a reasonable person would expect to be charged for the labor provided by Plaintiffs to Defendant.

69.     Defendant has benefited from the labor of Plaintiffs.  As a result of Plaintiffs' labor, Defendant has become unjustly enriched at Plaintiffs' expense.

70.     Defendant will be unjustly enriched if it is not required to pay the fair market value of the labor provided to Defendant by Plaintiffs.

71.     Absent a finding in favor of Plaintiffs on Count VII, the Plaintiffs will not have an adequate remedy at law.

## COUNT VIII-BREACH OF CONTRACT – CREDIT CARD ACQUISITION PROGRAM (CLASS ACTION)

72.     Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

73.     PCF breached its contract with Plaintiffs by failing to properly calculate and pay earned commission compensation per the Credit Card Acquisition Program [See Exhibit "4"].

74.     As a result of PCF's breach, Plaintiffs have suffered damages.

## COUNT IX – UNJUST ENRICHMENT-CREDIT CARD ACQUISITION PROGRAM (CLASS ACTION)

75.     Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

76.     Plaintiffs have demanded payment from Defendant for earned commission compensation pursuant to the Credit Card Acquisition Program and Defendant has refused to pay.

77.     Plaintiffs are unable to determine the reasonable value of the earned compensation as Defendant has access to the documents and programs containing the calculations and has refused to produce said documents and programs.

78.     Under such circumstances, a reasonable person would expect to be charged for the labor provided by Plaintiffs to Defendant.

79.     Defendant has benefited from the labor of Plaintiffs.  As a result of Plaintiffs' labor, Defendant has become unjustly enriched at Plaintiffs' expense.

80.     Defendant will be unjustly enriched if it is not required to pay the fair market value of the labor provided to Defendant by Plaintiffs.

81.     Absent a finding in favor of Plaintiffs on Count VIII, Plaintiffs will have no other adequate remedy at law.

## Attorney's Fees Demand

82.     Plaintiffs are entitled to attorney's fees pursuant to the FLSA for the claims in Count I and pursuant to Fla. Stat. §448.08 for all remaining claims and respectfully request this Court to award attorney's fees pursuant to this statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, James (Barry) Sandefur; Christy Sidener; Haydee Acevedo; and Melanie Watson pray this Court will do the following: (a) enter an Order, with respect to the claims set forth in Count I, permitting this case to proceed as a collective action; (b) enter an Order, with respect to Counts II through IX, certifying this case a class action in accordance with

Rule 23(b)(3) of the Federal Rules of Civil Procedure; (c) grant judgment in favor of Plaintiffs and all others similarly situated against Publishers Circulation Fulfillment, Inc. on their claims under the Fair Labor Standards Act as set forth in Count I and awarding each of these Plaintiffs and all others similarly situated who opt-in into this action his or her unpaid overtime wages and an equal amount in liquidated damages; (d) grant judgment in favor of Plaintiffs and all other class members against Publishers Circulation Fulfillment, Inc. on Plaintiffs and other class members claims under Counts II through IX for unpaid earned commissions lawfully due to him or her; (e) awarding Plaintiffs the cost of this action; (f) awarding Plaintiffs a reasonable attorney's fee with respect to their Fair Labor Standard Acts claim; (g) awarding Plaintiffs a reasonable attorney's fee under Florida Statute §448.08 with respect to their claims set forth in Counts II through IX; and (h) granting such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury in this matter.

/s/ Tiffany A. Sullivan
**TIFFANY A. SULLIVAN**
Florida Bar No. 647691
**CHARLES F. BEALL, JR.**
Florida Bar No. 66494
**GEORGE R. MEAD, II**
Florida Bar No. 096490
MOORE, HILL & WESTMORELAND, P.A.
220 W. Garden Street, 9th Floor
Pensacola, Florida 32502
Tel: 850/434-3541
Fax: 850/435-7899
Counsel for Plaintiffs
tsullivan@mhw-law.com
cbeall@mhw-law.com
emead@mhw-law.com
smccaul@mhw-law.com

14

### Credit Card Incentive Program – 2005-10-06

BEGINNING February 23, 2004 CUSTOMER CARE AGENTS WILL BE REWARDED FOR CONVERTING CUSTOMERS TO PAY FOR THEIR SUBSCRIPTION BY CREDIT CARD PAYMENT. IN ORDER TO BE ELIGIBLE FOR THIS INCENTIVE, THE CUSTOMER CARE DEPARTMENT MUST CONVERT A MINIMUM OF 750 ACCOUNTS PER MONTH.

- A CIS query is run to identify successful conversions of current subscribers. The accounts are identified by both the media code and promo code. Beginning June 2004, this report will be compiled by the BOA group.

- Any discrepancies need to be forwarded to respective Operations Manager no later than one week prior to the applicable pay date.

- The results are forwarded to the Director of Inbound Operations for review and signature.

- Calculations are forwarded to corporate payroll for processing. Incentives are paid once per month.

- Team Leaders are required to report any errors for correction to their Operations Manager, who will forward the errors and documentation to Robert Goldberg in BOA.

- Individual Agent Incentives are awarded based upon the following baseline performance criteria for the entire customer care group population.

- **750 – 799 CREDIT CARD CONVERSIONS = $0.50 PER CONVERSION**

- **800 – 899 CREDIT CARD CONVERSIONS = $1.00 PER CONVERSION**

- **900 – 999 CREDIT CARD CONVERSIONS = $1.50 PER CONVERSION**

- **1000 OR MORE CREDIT CARD CONVERSIONS = $2.00 PER CONVERSION**

### Team Leader and Manager Incentives

- Team Leaders are paid $.30 for each conversion made by their team and must begin and end the month as a team leader.

_____        _____
Director of Inbound Operations                    Date


_____        _____
VP of Contact Centers                                    Date


**EXHIBIT "1"**

**UPSELL / CROSS – SELL**
**OPERATIONAL STRATEGY – CUSTOMER CARE – 2005-10-06**

1) **DEVELOP STRATEGY TO ENSURE ACCURATE CODING BY AGENTS**
   - Provide agents with up-to-date job aid reference documents that indicate the accurate codes for the program.
   - Team leaders will provide coaching and feedback on proper use of codes.
   - Training will incorporate coding methods into actual training.
   - QA will monitor calls to ensure proper coding entries.

2) **PROCESS TO DRIVE AGENT PERFORMANCE**
   - Team Leaders will provide continuous feedback & coaching.
   - Team Leaders will conduct side-by-side and silent remote monitoring to ensure adherence to program process, business rules and standards for performance.

3) **CREATE INCENTIVE & RECOGNITION PROGRAM**
   - Any discrepancies must be forwarded to the respective Operations Manager no later than one week prior to the applicable pay date.

   **MONTHLY INCENTIVE AWARDS FOR OPS MANAGERS, TEAM LEADERS AND AGENTS ARE AS FOLLOWS:**

   1. $.75 PER UPSELL PER AGENT
   2. $1.25 PER CROSS SELL PER AGENT
   3. Team Leaders $.50 per upsell / cross sell for team. They must begin and end the month as a Team Leader.
   4. Operations Managers receive $.25 per upsell for site for total number of upsells for their team leader groups.

   As recognition for their performance in the project, results of individual achievement and the overall customer care group will be posted in a visible area of the Customer Care Department.

4) **COACHING :**
   - Team Leaders will provide feedback and coaching based upon performance measurement results, and side-by-side and silent remote monitoring. Team Leaders will incorporate this as part of the monthly performance report for individual agent.
   - Team Leaders will be provided weekly Stats on agent performance on Mondays for the previous week of performance.
   - Operations Managers will conduct routine and timely meetings to process feedback from TL's and agents to ensure continued performance.
   - Performance appraisals will evaluate participation and success the in project based upon the parameters established for this program and measured through Quality Assurance and Training.

_____          _____
Director of Inbound Operations                        Date

_____          _____
VP of Contact Centers & CRM                          Date

EXHIBIT "2"

### Save The Stop Program - 2008-06-20

> Incentives are based on individual achievement of agents. In order to be eligible for this incentive the agent has to have attained at least a 94% attempt rate throughout the applicable month.

> Attempt and save rates are determined by querying memos and stop codes entered into CIS and Siebel by agent population. These reports are generated by the BOA group.

> Any discrepancies need to be forwarded to respective Operations Manager one week prior to applicable pay date.

> The BOA dept will run an application at the beginning of each month for processing the STS Customer Care agent payments for the previous month.

> All results will be determined by two decimal places to determine qualifications and will not be rounded upwards.

> Operations Managers will review for quality and accuracy.

> The results are forwarded to the Director of Inbound Operations for Quality Control and signature.

> The approved payments are forwarded to Home Office Payroll for processing.

> These changes are applicable as of 7/1/08.

### Save the Stop Incentive Calculations

**IN ORDER TO BE ELIGIBLE AGENTS HAVE TO MEET OR EXCEED A 94% ATTEMPT RATE FOR THE ENTIRE MONTH. THE PAYMENTS WILL BE MADE ON A MONTHLY BASIS ACCORDING TO THE FOLLOWING GUIDELINES:**

> **≥ 94% ATTEMPT RATE & ≥ 34% SAVE RATE - $4.00 PER SAVE**

> **≥ 94% ATTEMPT RATE & ≥ 29.00% -- ≤ 33.99% SAVE RATE - $3.00 PER SAVE**

> **≥ 94% ATTEMPT RATE & ≥ 25.00% -- ≤ 28.99% SAVE RATE - $2.00 PER SAVE**

> **≥ 94% ATTEMPT RATE & ≥ 20.00% -- ≤ 24.99% SAVE RATE - $1.00 PER SAVE**

> **≥ 94% ATTEMPT RATE < 20.00% SAVE RATE - $0.00 PER SAVE**

> **Team Leaders receive 20% of the total dollar value awarded to their team and must begin and end the month as a team leader.**

_____          _____
Director of Inbound Operations          Date

_____          _____
VP of Contact Center & CRM              Date

**EXHIBIT "3"**

Credit Card Acquisition Incentive Program – 2005-06-01
(AMENDED AND EFFECTIVE 10/1/05)

[text heavily obscured]

- [obscured]
- [obscured]
- [obscured]
- [obscured]
- [obscured]
- ## [obscured] % CREDIT CARD ACQUISITION = [obscured] PER ACQUISITION
- **75.10% – 78.00% CREDIT CARD ACQUISITION = 1.75 PER ACQUISITION**
- [obscured] CREDIT CARD ACQUISITION = [obscured] PER ACQUISITION
- [obscured] OR GREATER CREDIT CARD ACQUISITION = [obscured] PER ACQUISITION

Team Leader and Manager Incentives

- Team Leaders [obscured] Credit Card acquisition [obscured]
- Assistant Managers [obscured] Credit Card acquisition [obscured]
- Site Managers are paid $.10 per Credit Card acquisition for the site.

Director of Inbound Operations                     Date

VP of Contact Center & CRM                         Date

**EXHIBIT "4"**